```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| MARCOS A. HERRERA-AMADOR,<br><br>        Plaintiff,<br><br>    -against-<br><br>NEW YORK CITY POLICE DEPARTMENT,<br>POLICE OFFICER KEVIN LEE, Shield # 7655,<br>SERGEANT WILLIAM MATTHIES, Shield #<br>1291, DETECTIVE KEVIN ARIAS, Shield #<br>152,<br><br>        Defendants. | **MEMORANDUM & ORDER**<br>**16-CV-5915 (NGG) (VMS)** |

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Marcos Herrera-Amador brought this action under 42 U.S.C. § 1983 against the City of New York, the New York City Police Department ("NYPD") and three individual officers, claiming violations of his constitutional rights. Previously, the court dismissed all of Mr. Herrera-Amador's claims except his claim for malicious prosecution and terminated the City of New York and Pilar Reyes, Mr. Herrera-Amador's wife, as parties to the case. (*See* Minute Entry and Order of Nov. 1, 2019.) Defendants then moved for summary judgment and the court referred the motion to Magistrate Judge Vera M. Scanlon, who issued the annexed Report and Recommendation ("R&R") recommending that Defendants' motion be granted in part and denied in part. (R&R (Dkt. 61).) Defendants then filed a timely objection. (Obj. to R&R ("Obj.") (Dkt. 65).) For the following reasons, the court ADOPTS the R&R in full.

1

## I. BACKGROUND

### A. Factual Summary

The court relies on the meticulously prepared "Factual Background" section of the R&R, which explains the complexities of the case and notes which facts are contested by the parties. (*See* R&R at 3-18.) To summarize the facts most relevant to the objections currently before the court: Mr. Herrera-Amador was at a gambling club in Queens, NY after midnight on September 3, 2013. (*Id.* at 4.) At approximately 2:00 a.m., armed robbers entered the club and stole jewelry, cellphones, and over $12,000 in cash from patrons. (*Id.* at 4-6.) The robbers fled the club at approximately 2:10 a.m. when police, including Defendants Officer Lee and Sergeant Matthies, arrived. (*Id.* at 4-5.)

At the scene, Officer Lee and Sergeant Matthies saw Mr. Herrera-Amador leaving the club, approached him with guns drawn, directed him to the ground, and handcuffed and searched him. (*Id.* at 5-6.) The search yielded no evidence related to the robbery. (*Id.*) After the search, Lee and Matthies left Mr. Herrera-Amador handcuffed to a fence. (*Id.*) Matthies later testified that he could not recall what made him believe that Mr. Herrera-Amador might have been involved in the robbery. (*Id.*) Police also stopped and detained two other suspects: Edgardo Rodriguez, who was found climbing a fence behind the club nearby a duffel bag containing over $9,000 in cash, jewelry, cellphones, a loaded .40 Glock pistol and a gravity knife; and Juan Alanzo, who was hiding in a shed within 500 feet of the club nearby a duffel bag containing over $3,000 in cash. (*Id.* at 6.)

Mr. Herrera-Amador, Rodriguez, and Alanzo were arrested and taken to the 110th precinct. (*Id.* at 7.) Officer Lee prepared an arrest report, approved by Sergeant Matthies, that stated Mr. Herrera-Amador had been "positively identified" as having been involved in the robbery. (*Id.*) Lee stated that a witness, Mauriano Paulino, identified Mr. Herrera-Amador in a sidewalk show-up at

the scene. (*Id.* at 6-7.) Paulino later testified that the show-up identification never happened and that he only identified Alanzo for police. (*Id.*)

Later in the day on September 3, Defendant Detective Arias was assigned to "enhance" Officer Lee's arrest by conducting a further investigation. (*Id.* at 8.) Detective Arias conducted only one interview, of Paulino. (*Id.*) Paulino told Arias that he could only describe one of the robbers and then positively identified Alanzo from a lineup. (*Id.*) Arias and Lee did not present Paulino with a lineup that included Rodriguez or Mr. Herrera-Amador. (*Id.*) Arias then produced an investigative report which stated that Paulino was able to identify Alanzo but did not document any more about the interview or mention that Paulino was unable to identify the other two suspects in custody. (*Id.* at 9.) Later, at his deposition, Paulino testified that he was "all the way to the back" of the club; that he could not see the front of the club because there was a large table with "a crowd of people" blocking his view; and that the scene was poorly lit. (*See* Dep. of Mauriano Paulino (Dkt. 52-19) at 128:6-24, 132:3-9.) Detective Arias's report contained none of that information.

On September 4, Mr. Herrera-Amador was arraigned on a six-count criminal complaint sworn against him, Rodriguez, and Alanzo. (*See* Criminal Compl. (Dkt. 52-9.)) In the complaint, Officer Lee stated that Paulino informed him that the three co-defendants entered the club together. (*See* Criminal Compl. (Dkt. 52-9.)) The complaint also alleged that Alanzo told everyone to get down, put a gun to the head of a club patron, handed the gun to Rodriguez who was standing by the door, and searched the pockets of other club patrons who were on the floor at knifepoint. (*Id.* at ECF p. 3-4.) Lee further stated that, according to Paulino, the three co-defendants fled through the rear door together after the robbery. (*Id.*) There are no allegations against Mr. Herrera-Amador in the complaint other than that, according to Paulino,

he entered and fled the club along with Rodriguez and Alanzo—statements that Paulino later testified he did not make. (See *id.*; R&R at 7.)

At the time of his arrest, Mr. Herrera-Amador, a citizen of the Dominican Republic, was free on bond in connection with a charge pending in federal court for remaining in the United States past the date for which he was given immigration authorization. (R&R at 16-17.) After his arraignment on the armed robbery charges, he spent one month in New York state custody before he was able to make bail. (*Id.* at 17.) However, upon his release from state custody, Mr. Herrera-Amador's federal bail was revoked, and he was taken into federal custody. (*Id.*) He was later returned to state custody to facilitate court appearances. (*Id.* at 17-18.)

Rodriguez and Alanzo were both indicted by the grand jury before the end of 2013. (*Id.* at 16.) Mr. Herrera-Amador was never indicted. (*Id.*) At a court appearance on August 5, 2014—11 months after Mr. Herrera-Amador was first taken into custody—an Assistant District Attorney stated: "This matter is being held by ADA Shorts. He has investigated the case. The People cannot go forward, therefore, we move to dismiss the docket." (Tr. of Aug. 5, 2014 Proceeding (Dkt. 55-12).) Defendants claim in their Rule 56.1 Statement of Facts that, "the criminal case against plaintiff was dismissed because the statutory period had expired for the prosecutor to present a case to the Grand Jury." (Defs.' 56.1 Statement (Dkt. 51) ¶ 29.) In his 56.1 Counterstatement, Mr. Herrera-Amador disputes Defendants' assertion and claims the District Attorney moved to dismiss the case "after an investigation provided no grounds to proceed." (Pl.'s 56.1 Counterstatement (Dkt. 55) ¶ 29.)

### B. Procedural History

On October 25, 2016, Mr. Herrera-Amador initiated this case. (*See* Compl. (Dkt. 1).) After discovery, Defendants requested a pre-motion conference in advance of a motion for summary judgment, arguing that all of Mr. Herrera-Amador's claims, save for his malicious prosecution claim, were time-barred or procedurally flawed. (*See* Defs.' Letter of Oct. 19, 2018 (Dkt. 34).) The court dismissed those claims and the parties briefed Defendants' summary judgment motion as to the malicious prosecution claim. (*See* Minute Entry and Order of Nov. 1, 2019; Defs.' Mem. in Supp. of Mot. for Summ. J. (Dkt. 53); Pl.'s Mem. in Opp. to Summ. J. (Dkt. 56); Defs.' Reply (Dkt. 58).) On November 5, 2020, the court referred the motion to Judge Scanlon who issued the R&R on February 20, 2021. (*See* Order Ref. Mot. of Nov. 5, 2020; R&R.) In the R&R, Judge Scanlon recommended that the court:

- Grant the summary judgment motion as to Defendant NYPD.

- Grant the summary judgment motion as to Defendant Sergeant Matthies.

- Deny the summary judgment motion as to Defendants Officer Lee and Detective Arias and find that they were not entitled to qualified immunity.

(R&R at 44.)

Defendants objected in part to Judge Scanlon's recommendation. Specifically, they argue that Mr. Herrera-Amador cannot establish two necessary elements of a malicious prosecution claim: (1) that the proceeding against him was terminated in his favor, and (2) that Detective Arias was personally involved in the alleged malicious prosecution. *See Frost v. New York City Police Dep't*, 980

5

F.3d 231, 242 (2d Cir. 2020); (Obj. at 6-11.) Mr. Herrera-Amador filed a response to Defendants' objection but did not object to any portion of the R&R. (*See* Pl.'s Obj. (Dkt. 67).)

## II. LEGAL STANDARD

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") The court reviews the portions of the R&R to which no party made an objection for clear error. *See Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 397 (E.D.N.Y. 2014).

## III. DISCUSSION

The court finds no clear error in the portions of the R&R to which no party has objected. Accordingly, Defendants' motion for summary judgment is granted as to Defendant NYPD and Defendant Sergeant Matthies. (*See* R&R at 1, n.2; 32-33.)

To succeed on his malicious prosecution claims against Officer Lee and Detective Arias, Mr. Herrera-Amador must establish four elements: (1) the initiation or continuation of a criminal proceeding against him by the defendants; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions. *See Frost*, 980 F.3d at 242. Here, the analyses under the first and fourth elements are specific to each defendant; the analyses under the second and third elements are the same for both. If Defendants show, as a matter of law, that no reasonable jury could find in Mr. Herrera-Amador's favor on any one of the four elements, they are entitled to summary judgment. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").[1]

The court adopts Judge Scanlon's finding, without objection from the parties, that triable issues of fact exist as to whether Mr. Herrera-Amador's arrest was supported by probable cause. (*See* R&R at 36-42.) Whether the officers personally involved in his prosecution acted with malice and whether they are protected by qualified immunity depends on resolving the factually contested probable cause issue and therefore neither analysis is suitable for summary judgment. (*See id.* at 42-44.)

The court now turns to the contested portions of Judge Scanlon's recommendation: first, whether a reasonable jury could conclude that the proceedings against Mr. Herrera-Amador were terminated in his favor; and second, whether a reasonable jury could conclude that Detective Arias was personally involved in initiating the criminal proceedings against Mr. Herrera-Amador.

### A. Favorable Termination

In *Lanning v. City of Glens Falls*, the Second Circuit clarified that for malicious prosecution claims brought pursuant to 42 U.S.C. § 1983, the relevant state's tort law "serves only as a source of persuasive authority rather than binding precedent in defining" the elements of the claim. *Lanning v. City of Glens Falls* 908 F.3d 19, 25 (2d Cir. 2018). Thus, although New York law requires only that the termination of a criminal proceeding is "not inconsistent with the innocence of the accused" in order to be favorable, federal law requires the proceeding to be terminated "in a manner

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

that is indicative of Plaintiff's innocence." *Id.* at 25, 27 (quoting *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001)).

The issue at bar is how to consider a dismissal on speedy trial grounds under *Lanning*. Under New York law, it is clear that a dismissal on speedy trial grounds "is not inconsistent" with innocence and satisfies the favorable termination element of a malicious prosecution claim. *See Rogers v. City of Amsterdam*, 303 F.3d 155, 160 (2d Cir. 2002). However, since *Lanning*, district courts in this circuit have differed on the question of whether a speedy trial dismissal is affirmatively indicative of innocence, so as to support a malicious prosecution claim under Section 1983. *Compare Minus v. City of New York*, 488 F. Supp. 3d 58, 66 (S.D.N.Y. 2020) (concluding that "speedy trial dismissal is not a favorable termination for purposes of a Section 1983 claim without an affirmative indication of the accused's innocence"); *Jamison v. Cavada*, 17-cv-1764 (LTS) (SDA), 2019 WL 6619328 at *5 (S.D.N.Y. Dec. 5, 2019) ("[B]ecause a dismissal on speedy trial grounds does not affirmatively indicate that Plaintiff was innocent of the charges, Plaintiff cannot demonstrate that the proceedings were terminated in his favor."); *Thompson v. City of New York*, 17-cv-3064 (DLC), 2019 WL 162662 at *4 (S.D.N.Y. Jan. 10, 2019) ("The dismissal of [Plaintiff's] case on speedy trial grounds does not affirmatively indicate his innocence. . . .") *with Scott v. City of New York*, 16-cv-834 (NGG) (ST), 2020 WL 208915 at *7 (E.D.N.Y. Jan. 14, 2020) (finding that plaintiffs, whose charges were dismissed on speedy trial grounds, "may . . . proceed with their § 1983 malicious prosecution claims"); *Blount v. City of New York*, 15-cv-5599 (PKC) (JO); 2019 WL 1050994, at *5 (E.D.N.Y. Mar. 5, 2019) ("While *Lanning* may raise the bar for establishing favorable termination under § 1983 in certain cases, the dismissal of a prosecution on speedy trial grounds in this case easily clears that bar."); *Nelson v. City of New York*, 18-cv-4636 (PAE), 2019 WL 3779420, at *12 (S.D.N.Y. Aug. 9, 2019) (finding "strong indications in *Lanning* that the

Second Circuit would regard a dismissal under the state speedy trial provision as a favorable termination").

The court does not read *Lanning* to foreclose federal malicious prosecution claims for all cases dismissed on speedy trial grounds. As the Second Circuit has held, "the dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997).[2] A speedy trial dismissal may not support a malicious prosecution claim without more, but to find that it automatically defeats a malicious prosecution claim runs afoul of the Second Circuit's admonition that "[f]ailure to treat a speedy trial dismissal as a favorable termination 'would encourage state officials, hoping to shield wrongdoing officers from liability, to commence criminal prosecutions against the victims of that wrongdoing and simply hold the criminal charges in abeyance until a court is forced to dismiss the case after six or more months.'" *Rogers*, 303 F.3d at 160 (quoting *Murphy*, 118 F.3d at 849) (alteration adopted). If the speedy trial clock expires because a lack of evidence leaves prosecutors unable to build a case against someone arrested without probable cause, it would be nonsensical and pernicious to bar malicious prosecutions claims that would have been available if the prosecutors freed the accused sooner.

Here, a reasonable jury could conclude that the circumstances surrounding the dismissal of Mr. Herrera-Amador's case were indicative of innocence. First, although his co-defendants were indicted promptly after their arrest, Mr. Herrera-Amador was never indicted and the charges against him may never have been presented to the grand jury. *Cf. Lanning*, 908 F.3d at 28 ("When

---

[2] *Lanning* favorably cited *Murphy* for the proposition that under traditional common law, a speedy trial dismissal is a "favorable termination." *Lanning*, 908 F.3d at 27 n.6. *See also Nelson*, 2019 WL 3779420, at *12 (concluding that *Murphy* is still good law after *Lanning*).

9

a person has been arrested *and indicted*, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily imply a lack of reasonable grounds for the prosecution.") (emphasis added). Moreover, the prosecutor's statement at the dismissal proceeding that the case "cannot go forward" after the office conducted an investigation could reasonably be understood to mean that the case against Mr. Herrera-Amador was too weak to continue. If so, the fact that the District Attorney only dropped the case when the statutory period to bring an indictment expired does not provide immunity from a malicious prosecution claim.[3]

### B. Claim Against Defendant Arias

For the purposes of a malicious prosecution claim, "police officers can 'initiate' prosecution by filing charges or other accusatory instruments." *Cameron v. New York*, 598 F.3d 50, 63 (2d Cir. 2010). "A police officer can also initiate a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor." *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014). An officer who "misrepresented the evidence to the prosecutors, or failed to provide the prosecutor with material

---

[3] Contrary to Defendants' assertion, it is appropriate for the court to leave for the jury the question of whether the prosecution was favorably terminated, because that issue turns on a contested question of fact. (*See* Obj. at 4.) Defendants quote *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 413-14 (S.D.N.Y. 2018): "In general, the question of whether a termination was favorable to the accused is a matter of law for the court." The full quotation reads: "In general, the question of whether a termination was favorable to the accused is a matter of law for the court, *but where questions remain as to the reason for the termination, this becomes an issue of fact for the jury*." (Emphasis added.) Defendants quote from *Rodriguez* in a manner that seems designed to obscure the existence and applicability of a clear exception to the general rule they urge the court to follow. The court encourages Defendants to argue their case under the law as it exists, rather than attempting to mislead the court as to the state of the law.

evidence or information . . . while knowing that he was making a material misrepresentation or omission" can also be held to have initiated a prosecution for the purposes of a malicious prosecution claim. *See Morse v. Fausto*, 804 F.3d 538, 548 (2d Cir. 2015); *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010).

Officer Lee, indisputably, satisfies the initiation element because he executed the criminal complaint against Mr. Herrera-Amador. However, Defendants argue that Judge Scanlon erred in finding the same for Detective Arias, because "Plaintiff's Complaint is devoid of any particularized allegation as to how [he] actually participated in the allegedly malicious prosecution." (Obj. at 9.) Unlike every case cited in Defendants' objection on this point, this is a motion for summary judgment, not a motion to dismiss, and the court considers the record in its entirety, not only the pleadings. A reasonable jury could find that Detective Arias conducted a selective and targeted investigation by only interviewing one witness and failing to record that witness's professed inability to reliably identify any suspects other than Alanzo, and that his view of the scene was obstructed in significant respects. *See Dufort v. City of New York*, 874 F.3d 338, 353 (2d Cir. 2017) ("The 'initiation' requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect.") The record establishes Detective Arias worked closely with Officer Lee, particularly with regard to Paulino, and Defendants are not entitled to summary judgment on the malicious prosecution claim against him.

## IV. CONCLUSION

For the reasons stated above, the court ADOPTS Judge Scanlon's R&R in full. Defendants' Motion for Summary Judgment (Dkt. 50) is GRANTED as to Defendants NYPD and Sergeant Matthies and DENIED as to Defendants Officer Lee and Detective Arias.

The parties are DIRECTED to contact the chambers of Judge Scanlon concerning next steps in this case.

SO ORDERED.

Dated: Brooklyn, New York
July 15, 2021

/s/ Nicholas G. Garaufis<br>NICHOLAS G. GARAUFIS<br>United States District Judge